**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Tyler Kontos - 001
Joel Max Kupetz - 002
Jorge Kinds - 003,

Defendant.

No. CR-25-00915-001-PHX-SMB

**ORDER**

The Court now considers Defendant Joel Max Kupetz's Motion to Vacate (Doc. 54). The Motion is fully briefed. The Court rules as follows.

## I. INTRODUCTION

As part of a pre-indictment investigation, the Government obtained seizure warrants from a magistrate judge for the contents of three financial accounts connected to Defendant (the "Three Accounts"). (Doc. 54 at 2.) The Government executed the warrants and seized a total of $6.6 million[1] from the Three Accounts. (*Id.*) A grand jury indicted Defendant and he was charged with "conspiracy to commit health care fraud (18 U.S.C. § 1349), health care fraud (18 U.S.C. §§ 1347 and 2), conspiracy to defraud the United States (18 U.S.C. § 371), receiving health care kickbacks (42 U.S.C. §§ 1320a-7(b)(1) and 2), and transactional money laundering (18 U.S.C. §§ 1957 and 2)." (Doc. 60 at 3.) The Government seized Defendant's $6.6 million based on his alleged money laundering

[1] This Order uses approximate numbers unless otherwise stated.

pursuant to 18 U.S.C. §§ 981–982, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c). (Doc. 58 at 1, 29, 56.)

The Government's Probable Cause Affidavit stated as follows. [redacted]

[redacted]

[redacted]

After the warrants were granted, the Government seized: (1) $28,000 from the US Bank Account; (2) $3.7 million from the CS Account; and (3) $2.9 million from the Coinbase Account. (Doc. 60 at 12–13.)

Defendant moves for the Court to vacate or modify these warrants. (Doc. 54 at 4.) He argues: (1) "The warrants were issued without probable cause as to each account and are overbroad, because the supporting affidavit failed to trace criminal proceeds to the

seized funds and instead impermissibly treated commingled accounts as wholly forfeitable"; (2) "The Government's application did not satisfy [21 U.S.C.] § 853(f)'s requirement to show why less restrictive restraining orders were inadequate, rendering the seizures unlawful"; (3) "The seizures offend the Fourth Amendment's particularity and probable cause requirements by sweeping in untainted assets without specific justification"; (4) "The scope of these seizures, if left uncorrected, would violate the Excessive Fines Clause of the Eighth Amendment, as the value seized is grossly disproportionate to the legitimate penalties or forfeitable proceeds in this matter." (*Id.* at 4.) Defendant also argues that the seizure implicates Fifth and Sixth Amendment concerns. (*Id.* at 12–14.)

## II. LEGAL STANDARD

Section 1957(a) provides that a person is guilty of money laundering if they "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." "Any property, real or personal, involved in a transaction or attempted transaction in violation of [§ 1957], or any property traceable to such property" is subject to civil and criminal forfeiture. § 981(a)(1)(A) (civil); *see* § 982(a)(1) (criminal); *see also United States v. Lo*, 839 F.3d 777, 791 (9th Cir. 2016) ("§ 2461(c) permits the government to seek criminal forfeiture whenever civil forfeiture is available and the defendant is found guilty of the offense." (citation modified)).

Section 853(a) "provides for pretrial restraint and seizure of potentially forfeitable property if certain statutory requirements are met." *United States v. Swenson*, No. 1:13-CR-91-BLW, 2014 WL 2506300, at *2 (D. Idaho June 3, 2014) (citing § 853(e), (f)). Under this statute, forfeitable property includes "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" a crime and "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a crime.[2] § 853(a)(1), (2). Under § 853(e), a

[2] Section 853 only applies to certain criminal offenses. The parties do not dispute, as a general matter, that financial accounts are subject to forfeiture under the charged crimes.

"court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of" the property described in § 853(a). However, "[i]f the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property." § 853(f).

## III. DISCUSSION

"[A] pre-trial asset restraint [is] constitutionally permissible whenever there is probable cause to believe that the property is forfeitable." *Kaley v. United States*, 571 U.S. 320, 323 (2014). "That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Id.* at 323–24. "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* at 338 (citation modified). Defendant primarily argues that the second part was not satisfied here.

### A. Probable Cause

Defendant argues that there was not probable cause to support the seizing of the accounts. (Doc. 54 at 4.) Specifically, Defendant argues that there was not "probable cause to believe that *all* funds in each targeted account were forfeitable." (*Id.* at 5 (emphasis in original).) Importantly, "the *Kaley* Court held that an indicted defendant has no constitutional right to contest in a pretrial hearing a grand jury determination of probable cause to believe that a crime has been committed because, on this issue, '[t]he grand jury gets the final word.'" *See United States v. Bikundi*, 125 F. Supp. 3d 178, 185 (D.D.C. 2015) (quoting *Kaley*, 571 U.S. at 341)). "[A]lthough a defendant may not challenge the grand jury's determination that the defendant committed the offense charged, the defendant

---

(*See* Doc. 60 at 4).

may challenge [a] grand jury's determination that the seized property is sufficiently related to the crime or crimes charged in the indictment." *United States v. Miller*, 295 F. Supp. 3d 690, 696 (E.D. Va. 2018), *aff'd*, 911 F.3d 229 (4th Cir. 2018) (citing *Kaley*, 571 U.S. at 341).

As a threshold matter, the Court reviewed the Affidavit and finds that it contains sufficient allegations to establish probable cause to seize the accounts—at least in part. Again, Defendant was charged with multiple crimes including transactional money laundering under § 1957. (Doc. 60 at 3.) Section 1957"provides that a person who 'knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity' may be convicted of transactional money laundering." *United States v. Clark*, No. CR-24-00611-PHX-SPL-01, 2025 WL 814270, at *3 (D. Ariz. Mar. 13, 2025) (quoting § 1957(a)). As noted, the Affidavit describes a sophisticated scheme in which Defendant received millions of dollars from companies which perpetuated an expansive health care fraud scheme. (Doc. 58 at 5–8.) Defendant was a "sales representative" for these companies, despite not being medically trained, and was paid $8.3 million in less than one year. (*Id.* at 15.) The Affidavit specifically identifies the date and amount of each dollar flowing from Apex and Viking to Defendant's Karma and PC accounts, and from those accounts to the Three Accounts. Indeed, Defendant acknowledges that the Affidavit can be read to establish "that certain deposits into the accounts (or transfers between them) were derived from the suspect health-care business operations." (Doc. 54 at 5.) Given the generous probable cause standard, and the fact that a magistrate judge's "probable cause finding must be accorded 'great deference,'" the Court finds that there was probable cause to seize the funds generated by the alleged fraudulent healthcare scheme. *See United States v. Swenson*, No. 1:13-CR-00091-BLW, 2013 WL 3322632, at *4 (D. Idaho July 1, 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

Still, Defendant contends that the Government was not entitled to seize all the funds in the accounts because they also contained "untainted" funds. (Doc. 54 at 5.) The

Government concedes that it seized untainted funds, but nevertheless argues that "[u]nder 18 U.S.C. § 1957, if criminal proceeds are commingled with untainted assets, the untainted assets are subject to forfeiture." (Doc. 60 at 5.) The Court disagrees.

Again, the Government may restrain assets before trial to the extent those assets are ultimately forfeitable. *See Kaley*, 571 U.S. at 323. The Government contends that under § 982, any funds "involved in" money laundering are subject to forfeiture. (Doc. 60 at 14.) While this is true, the Government does not identify any authority persuasively establishing that when tainted money is deposited into an account with untainted money, that the untainted money becomes "involved in" or is otherwise traceable to the underlying money laundering.

The only authority remotely standing for the Government's proposition is *United States v. Real Property*, No. 5:08-CV-303-OC-10GRJ, 2008 WL 11470836, at *6 (M.D. Fla. Dec. 29, 2008). There, the court explained that "under section 1957 the United States is entitled to seek forfeiture of all funds in an account, even if clean funds are involved." *Id.* Though this proposition is broadly stated, the cases on which *Real Property* relies stand for a narrower proposition. *Real Property*, in making the foregoing assertion, relies on cases such as *United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp. 248, 252–53 (E.D.Va. 1993) and *United States v. Real Property Known as 1700 Duncanville*, 90 F.Supp. 2d 737, 741 (N.D. Tex. 2000). *Real Property*, 2008 WL 11470836, at *6. However, *1987 Mercedes Benz* and *1700 Duncanville* both involved the forfeiture of *property* purchased with legitimate and illegitimate funds. *See 1987 Mercedes Benz*, 820 F. Supp. at 252 (holding that a car partially purchased with legitimate funds was still subject to forfeiture because the entire vehicle [] was involved in the money laundering transaction, not merely the funds traceable to the extortion"); *1700 Duncanville*, 90 F.Supp. 2d at 741 ("Since the purchase of the subject properties was itself a money laundering transaction under section 1957, it is immaterial that claimants may have also used untainted funds for its purchase.").

The Court is not convinced that seizing *property* purchased with tainted and untainted funds is similar to seizing an *account* with tainted and untainted funds. In the

former situation, the property is connected to money laundering because it was purchased with illegitimate funds. In such circumstances, the untainted funds actually become commingled with tainted funds. However, such a connection does not exist merely because tainted and untainted funds reside in the same account; especially here where it is clear which funds are legitimate and illegitimate.

Notably, *Real Property* also relies on *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997), which holds "that merely pooling tainted and untainted funds in an account does not, without more, render that account subject to forfeiture." *Tencer* goes on to note that courts generally recognize that there must be some nexus between the tainted and untainted funds for the untainted funds to be subject to forfeiture. *See id.* at 1135 (citing cases). The Court finds this persuasive as it aligns with the text of the applicable forfeiture statutes. Again, these statutes provide that property is subject to seizure only if the property is "involved in" or otherwise traceable to money laundering. *See* § 981–982; *see also* §853.

Applied here, the Government does not suggest that there is any nexus between the untainted and tainted funds aside from residing in the same account. Neither does the Government offer an explanation as to how untainted funds deposited in the CS and Coinbase Accounts are "involved in" money laundering. The untainted funds were deposited into the accounts prior to the tainted funds. Accordingly, the Court will grant Defendant's request for the Government to relinquish the untainted funds, namely, the $277,210.34 from the CS Account and the $47,605.11 from the Coinbase Account. *See United States v. Stewart*, 185 F.3d 112, 130 (3d Cir. 1999) (noting there is no difficulty in separating tainted funds from untainted funds in a bank account). This conclusion obviates the need for the Court to entertain Defendant's Sixth and Eighth Amendment arguments, which were primarily predicated on the continued seizure of the untainted funds. (Doc. 54 at 14–16.) This conclusion also renders moot Defendant's request for a *Monsanto* hearing.[3] (Doc 54 at 13.)

[3] Courts generally provide defendants "a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer, i.e., a *Monsanto* hearing." *United States v. Lacey*, No. CR-18-00422-001-PHX-DJH, 2021 WL 5882638, at *7 (D. Ariz. Dec. 10, 2021) (citation modified); *see also United States v. Unimex, Inc.*, 991 F.2d 546 (9th Cir. 1993).

**B. § 853(f) Requirement**

Defendant also argues that the seizure warrants must be vacated because the Government failed to demonstrate that a protective order under § 853(e) would "not be sufficient to assure the availability of the property for forfeiture," as required for seizure under § 853(f). (Doc. 54 at 8.) In the Affidavit, the Government asserted that seizure was necessary because [redacted]

The Court finds that § 853(f) applies. Indeed, courts have noted under § 853(f) that funds in a bank account can "be easily transferred and that [a] seizure warrant was necessary to insure that the funds would be available for later forfeiture." *United States v. Lewis*, No. 04-403 (JNE/SRN), 2006 WL 1579855, at *5 (D. Minn. June 1, 2006); *see, e.g.*, *United States v. Wiese*, No. CIV. 10-51297, 2012 WL 43369, at *2 (E.D. Mich. Jan. 9, 2012) (upholding the seizure of a bank account on the basis that "property of that nature could easily be transferred out of those accounts"); *United States v. Martin*, 460 F.Supp.2d 669, 677 (D. Md. 2006) ("Given the fungible and readily transferable nature of the property (mostly cash) and the size and seriousness of this alleged conspiracy . . . this Court cannot conclude that there was no probable cause to believe that a seizure warrant was necessary to secure the property for trial.").

**IV. CONCLUSION**

Accordingly,

**IT IS ORDERED granting in part** Defendant's Motion to Vacate (Doc. 54) and directing the Government to return of $277,210.34 seized from the CS Account and the

assets valued at $47,605.11 seized from the Coinbase Account.

Dated this 1st day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge